## Walker Township Overseers *v.* Perry Co., Directors of The Poor, Appellant.

*Poor law—Appeals—Act of June 13, 1836.*

Under the act of June 13, 1836, P. L. 546, an appeal from an order of removal of a pauper must be made to the next court of quarter sessions after the order of removal is made, although the removal is not actual but constructive only.

Where an order of removal is served on or prior to January 29th, the appeal must be taken to the court of quarter sessions which commences on the 1st and ends on the 4th of February, An appeal to the April sessions is too late.

Argued May 24, 1893. Appeal, No. 73, July T., 1893, by defendant, from order of Q: S. Juniata Co., April T., 1893, No. 8, dismissing appeal from order of removal of pauper. Before STERRETT, C. J., WILLIAMS, MITCHELL, DEAN and THOMPSON, JJ.

Rule to strike off appeal from order removing pauper.

Opinion of court below was as follows, by LYONS, P. J.:

" On Dec. 23, 1891, on the complaint and application of the overseers of the poor of Walker township, Juniata county, Pa., to C. B. Horning and Adam H. Weidman, two justices of the peace of Juniata county, an order of removal was granted, removing one Martin Miller, a pauper, from the said poor district of Walker township, to the county of Perry, which was adjudged, by the said justices, to be the last place of legal settlement of the said Martin Miller. On or about the 20th day of January, A. D. 1892, David Diven, one of the overseers of the poor of Walker township, served this order of removal on John R. Boden, the steward of the Perry county almshouse, by giving to him the original order of removal and informing him of the contents thereof. Mr. Boden asked Mr. Diven to take the order of removal along, and give it to John Freeland, one of the directors of the poor and house of employment of Perry county. Mr. Diven then requested Mr. Boden to send the order of removal, by mail, to said John Freeland, and as the testimony shows he agreed to do so. Mr. Boden testifies: 'I sent the order to Mr. Freeland. I sent the order by mail. That would be either Thursday or Friday.' John Freeland testifies

on cross-examination: 'I cannot remember when I received the order from Mr. Boden. At that time we only received mail from the poorhouse once a day. I get my mail at Newport. Sometimes I get my mail regularly and sometimes I do not. Generally I got it regularly. I was rational all the time I was sick. I do not remember just when I took sick. Do not know how long I kept the order before I took it to our attorney. Our January meeting in 1892 occurred on the 29th day of that month. I was present at that meeting of the board. In the presence of the whole board and the steward, I said to the steward that I had not seen our attorney yet in regard to the Martin Miller case. I then said what does it mean? Did they bring the boy? The steward replied that they had not brought him. Mr. Boden told me the reason why they had not brought the pauper Martin Miller, was because they could not catch or get him.' On redirect examination he testified: 'Martin Miller was never to the best of my knowledge delivered at the poorhouse under the one commitment.' The 20th day of January, 1892, was Wednesday, and Mr. Freeland in all probability received the order of removal not later than Jan. 23, 1892, as he testifies there was a daily mail between Loysville and Newport. At all events his own testimony clearly establishes the fact that he had received the order of removal prior to Jan. 29, 1892. The next quarter sessions of Juniata county commenced on Monday, Feb. 1, A. D. 1892, and did not adjourn until at least the 4th day of February, A. D. 1892. The succeeding term of the court of quarter sessions commenced April 25, 1892. During that term on the 29th day of April, 1892, the directors of the poor and house of employment of Perry county, filed an appeal from said order of removal. On the same day the overseers of Walker township obtained a rule to show cause why this appeal should not be dismissed because not taken to the next court of quarter sessions.

" That an appeal is too late unless taken to the next court of quarter sessions is well settled. Sugar Creek Overseers v. Washington Overseers, 62 Pa. 479; Directors of Westmoreland Co. v. Overseers of Conemaugh, 34 Pa. 231; Bradford v. Keating, 27 Pa. 275; Cherry Twp. v. Marion Twp., 96 Pa. 528.

" In this case Martin Miller was not delivered at the Perry county poorhouse at the time when the order of removal was

served.   Nor does it appear that he has ever been delivered there.

"It was argued that the act of June 13, 1836, contemplates an actual physical removal and not a constructive one, where possible.   The 16th section of said act provides for the removal of two classes.   One where the person has become chargeable to the district complaining and applying for the order of removal, and the other where the person sought to be removed is likely to become chargeable to such district.   In either case, either the poor district to which the person is removed, or the person removed, may appeal, if they think themselves aggrieved, to the next court of quarter sessions.   As was said by LOWRIE, J., in Bradford township v. Keating Township, 27 Pa. 277, ' The office of the order is twofold.   First, like that provided for in the 6th section of the poor law, it requires and justifies the placing of the pauper on the poor books, and the law regards the justices as perfectly competent to conduct the inquiry that leads to this result, without giving notice to anyone. And, second, it decides where the pauper's legal settlement is, and of this the order of removal gives notice.'

"The justices first hear the evidence and determine where the last place of settlement of the person or persons sought to be removed is.   When they have judicially determined this fact, it is a judgment of a court of competent jurisdiction. And upon that judgment they issue the order of removal. This order justifies the overseers in removing the person or persons, willing or unwilling, to the poor district in which the justices have adjudged to be his or her last place of legal settlement.   A notice of this judgment must be given to the overseers of the district to which a pauper has been removed, in order to bind that district.   How this notice should be given, the act of assembly does not provide.   The usual practice has been to deliver the pauper, together with a copy of the order of removal.   But the delivery of the pauper to the overseers of the district to which the justices have granted the order of removal is not essential: Overseers of Donegal Township v. Overseers of Sugar Creek Township, 20 W. N. 307.

"I am of opinion that a service of the order of removal, or a copy thereof, on the overseers of such district is sufficient notice, and especially under the circumstances of this case, as

the evidence shows that the overseers of Walker township could not find the pauper at the time the order of removal was served on the directors of the poor of Perry county. The order of removal in this case having been served on the steward of the house of employment of Perry county on Jan. 20, 1892, and by him sent to John Freeland by next mail, and received by him prior to Jan. 29, 1892, the directors of the poor and house of employment of Perry county had ample time to appeal to the next court of quarter sessions of Juniata county, and not having so filed their appeal the same is dismissed. And now, Feb. 6, A. D. 1892, the appeal of the directors of the poor and house of employment of Perry county, from the order of removal of C. B. Horning and Adam H. Weidman, two justices of the peace of Juniata county, for the removal of Martin Miller from the poor district of Walker township to the poor district of Perry county is dismissed."

*Error assigned* was order as above.

*W. H. Sponsler, E. R. Sponsler* and *J. Howard Neely* with him, for appellant, cited: 13 & 14 Car. 2, ch. 12, §§ 1 & 2; 3 Ruffhead, 243; 3 W. & M., ch. 11, § 10; 3 Ruffhead, 475; act of March 9, 1771, 1 Sm. Laws, 340; act of June 13, 1836, P. L. 546; Rex v. Inhabitants of Norton, 2 Str. 831; Rex v. Justice of Devonshire, 2 Botts, Poor Cases, 747; 4 Burn's Justice, 709; Rex v. Hartfield, 2 Botts, Poor Cases, 924; Rex v. Justice of Herefordshire, 2 Botts, Poor Cases, 964; Adams v. Foster, 20 Johns. 452; Bradford v. Keating, 27 Pa. 277; Donegal v. Sugar Creek, 20 W. N. 307; Houston v. Jay, 9 Pa. C. C. R. 412.

*J. N. Keller* and *Atkinson & Pennell*, for appellees, not heard, cited: Bradford Township v. Keating Township, 27 Pa. 277; Directors of Westmoreland Co. v. Overseers of Conemaugh, 34 Pa. 233; Sugar Creek Overseers v. Washington Overseers, 62 Pa. 480; Overseers of Cherry Township v. Overseers of Marion Township, 96 Pa. 532; Overseers of Donegal Township v. Overseers of Sugar Creek Township, 20 W. N. 306; Houston Overseers v. Jay Overseers, 9 Pa. C. C. R. 413: Rex v. Lampeter, 3 B. & C. 454.

PER CURIAM, July 19, 1893:

The controlling facts of this case, together with the law applicable thereto, are so clearly and accurately stated in the opinion of the learned president of the quarter sessions that further elaboration of the questions involved is unnecessary.

Among other things, he finds that the order of removal was duly served on defendants prior to January 29, 1892. That was in ample time to have enabled them to appeal therefrom to the next court of quarter sessions, which commenced on the first and ended on the fourth of February, 1892. They neglected to do so, however; and, having afterwards filed their appeal to the April sessions following, a rule was taken to dismiss it because it was out of time and therefore unauthorized. That rule was made absolute because the act of June 13, 1836, sect. 19, as construed by this court, expressly requires that such appeals shall be to the next court of quarter sessions after the order of removal is made, and not afterwards: Overseers of Sugar Creek v. Overseers of Washington, 62 Pa. 480; Overseers of Cherry v. Overseers of Marion, 96 Pa. 532.

It therefore follows that the decree dismissing the appeal was rightly entered; and the same is affirmed, with costs to be paid by the appellants.